Okay, the next case on the docket this morning is In the Matter of Tamara B, 513-0479. Looks like the appellee has weighed their argument, and so, Ms. Gaben, Gaben? Golden. Golden! No, we should get her right. Ms. Golden? Please proceed. Thank you, Your Honor. May it please the Court, I represent Ms. B, who is appealing her involuntary commitment order. Basically, here we have four issues. Whether the state presented clear and convincing evidence for the criteria for commitment. And that's two elements. The expert has to give an explicit opinion that the person meets the criteria, one of the three criteria. And then they have to have facts to support the criteria. The third issue is whether the petition complied with Section 53606 by disclosing whether the police engaged with the client in transporting her to the hospital. And the final issue is always the issue of lewdness, which is always with involuntary commitment cases. Well, assume for the moment that we're going to hear that, so you can dispense with that part. Okay. So, with regard to, there's three criteria for involuntary admission. First is physical harm. Second is basic needs that endanger serious harm. And third is unable to understand the need for treatment that would deteriorate to the point that you would engage in physical harm or serious harm. Now, with regard to the expert opinion, the state concedes that it was never asked about basic needs or unable to understand the need for treatment. And the state says, well, the expert opinion was satisfied when the state asked the person, was she being aggressive in the community and would she place herself in harm? Now, I'm not trying to be too technical and say, oh, they have to ask the magic word. But for involuntary commitment, you have to be very precise for substitute due process reasons. Basically, before this current amendment, they had dangerous activity, and they struck that out as being too broad. It has to be in danger of physical harm. And being aggressive or placing oneself in harm is really not the same as physical harm. And I was thinking about this the other day. Aggressive behavior could include someone in a stadium being a rowdy. They could be aggressive. They could put someone in harm. But it's not physical harm. And you have to – it's not such a high criteria. You just have to ask directly, does this person meet the criteria for involuntary admission? That was never even asked. It was, would this person be aggressive in the community? Would this person be harmed in the community? And in the record, was there any further explanation about what they meant by being aggressive? No. So, I mean, there was no description of actually what she did. Right. Later on in the testimony, she did describe that she was more verbally aggressive than physically aggressive on the thing. But even there, though, there was no question, what did she say? Well, there was a question. They asked her, what did she say? And the witness didn't know. Okay. Okay. So there's no testimony about it. Correct. I'm pretty sure there was no further detailed explanation about this aggressiveness. Right. And if it was that serious, you would remember someone threatened to kill someone or use a knife or use a gun on someone. You know, if it was – you know, I agree, verbal threats could be enough to connect someone. But, you know, you have to be precise. You need to know what they were. Right. So the vagueness of it is troubling on this part. And the second criteria is really the facts to support this. The state is conceding that they didn't meet the criteria for basic needs. And we're not saying that there was no evidence, it's just the state didn't present it at this time at the hearing. So basically, the two issues are unable to understand the basic need for treatment. And in this case, Ms. B was not – I think the newer one, part three, is for someone who's very recidivism, you know, like gets discharged, then stops medication, then gets readmitted, you know, gets discharged. You know, there are frequent flyers in my business. She's not one of them. She was 15 years without a commitment. And it was uncontested that she was taking meds. And the reason why she stopped was because of a change in doctors. And she was attending class. She never denied she had a mental illness. She questioned the diagnosis, but she didn't deny having a mental illness. Now, she's actually 98% better than most of the clients I have on this. So it's really troubling that this was affirmed – you know, this was ordered on this issue of unable to understand the need for treatment. And it was never asked of the state's witness, did she not understand the need for treatment. It was that she was noncompliant in some aspects, but it wasn't that she didn't understand the need for it. Correct me if I'm wrong here, but doesn't the record reflect that she was actually released less than 90 days? Yeah, to herself. So, yeah. So it was a very short commitment, the first time in 15 years. You know, if she was that physically harmful, it's a very short commitment for that. And I think – I mean, the strongest case, to be honest, the state had is the physical harm, but even that was very weak here. Because basically, she ripped – the evidence given was she ripped a piece of paper given by the social worker, and she ran through the halls flapping her arms. I don't forget that detail. Saying I'm a chicken, I want to be free. Well, it's more arguing about her wanting to be free than being physically aggressive. You know, they never – and it's abnormal, of course, but it doesn't prove physical harm. You know, she never injured or touched a staff. There's no history of violent behavior, no history of criminal behavior. Let's say I have clients who were NGRI for being – you know, for murder or physical assault or something. She's had no history of that. And the social worker testified that she was verbally aggressive, but she – you know, when followed up by the state's attorney, she couldn't recall any of these verbal aggressive. And the social worker admitted that she made no bodily threats to her when she interviewed her. So this is a – you know, I understand the court's deference to the lower court, but this is so low of the evidence provided of physical harm. I think what happens is there's not so much presence on these issues of defining what's physical harm. And, you know, I think these verbal threats were really – that weren't specified does not really meet the definition of someone being threatened to be physically harmed for a commitment. And then the third issue is the police information. Section 53606 requires in the petition if a transporting officer or officer who detains a person, it's required to put in the petition their name, badge number, department. Now, in this one, there was nothing in the petition that said police involvement until the state testified police were called, she was transported to the hospital. That's the exact thing on page 7 of the record. But as I understand it, there's not a clear evidence that the police were the ones who transported her. No, but at least the police weren't detaining her enough to transport. I mean, knowing common sense is – I know, but are we to infer that, or doesn't the statute actually say that they have to take her into custody or detain her? Yeah, it says detain, custody, or transport. And the petition, as I recall, said – marked the box that the police weren't involved. Right, so how do we square that? Yeah, I mean, and that's really the strongest argument on the state with this. But I think if it was strong enough or enough police involvement that the state mentioned it in their brief testimony, I think in knowing my clients, they wouldn't go willingly to the ambulance without police involvement. I think there was – You're inferring something there when you say knowing my clients. Right. Are we supposed to know your clients and make that inference? Right. You can understand our problem there. Right. Well, let me ask you a question, if I could, before your time runs out here, about the mootness. Okay. Let's just say, for sake of argument, we disagree with you on the part about the police officer. So we're really not going to decide that issue and say it has to be in there. You know, why wouldn't this be moot? I mean, you're not really asking us to establish anything new about the criteria for the one prong that you're really arguing here about physical harm. She, as you say, is not one of your frequent flyers, so it's not likely to be a repetition. Well, there is no precedent on the third prong of unable to understand the medical need for treatment. It was brand new a couple years ago, so there's no precedent on that. So I would think that would meet the public interest exception. You feel like your strongest argument on the mootness issue. Yeah, and also on the other two prongs, too. You know, Rita P. said, well, of course, in the public interest, any opinion is helpful to the practitioner. But then they said, well, this is the first time we've looked at it, so it meets this exception. I think when there's so few, there's really not that many current cases, even on threatening behavior. You know, we had to go back a couple years on this. I think, you know, number two. Sorry, just a minute. So number three, on the third prong, unable to understand the need for treatment, there's no precedent. And there's very little precedent on threatening behavior. And I would say the very little makes it more into the public interest exception. There's not like 10 or 15 cases. And really, just to be honest, in front of the practitioner, the circuit court, you know, the statute doesn't define these terms. And the circuit court judges want more case law on what behavior qualifies under this. I mean, I know you're eating between sufficiency of evidence and this. But there is no defined, you know, the code doesn't define these terms. And I know in front of the three or four circuit judges I practiced recently, you know, they want more definition, more definement of what these terms mean. Okay. Thank you very much. Thank you. Appreciate it. All right. This matter will be taken under advisement, and a disposition will be issued in due course.